[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10694
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-20406-BB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHANE MARIANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 25, 2016)

Before TJOFLAT, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Shane Mariano appeals his conviction and resulting sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mariano asserts his conviction should be vacated because: the district court erroneously admitted eyewitness testimony and DNA evidence at his trial; the district court erred by refusing to instruct the jury on cross-racial identification; and there was insufficient evidence to support his conviction. Mariano also challenges his sentence, asserting the district court: erroneously sentenced him pursuant to 18 U.S.C. § 924(e)(1) of the Armed Career Criminal Act (ACCA); improperly calculated his base offense level under the Sentencing Guidelines; and imposed an unreasonable sentence on him. We hold that the district court did not commit any reversible trial error. However, we conclude that the court erred in sentencing Mariano pursuant to § 924(e)(1). Accordingly, we affirm Mariano's conviction, but vacate his sentence and remand for resentencing.

## I.    BACKGROUND

### A. Trial

In 2014, Mariano was indicted on one count of being a felon in possession of a firearm, in violation of § 922(g)(1). At his trial, the prosecution argued that Mariano threatened a cab driver with a silver pistol on January 17, 2014. In support thereof, the prosecution proffered, *inter alia*, testimony from the cab

2

driver, testimony from one of the police officers who apprehended Mariano, and DNA evidence related to the silver pistol.

### 1.  Summary of the Cab Driver's Testimony

At approximately 1:00 a.m. on January 17, someone driving a white Ford Mustang began honking at the cab driver while he was dropping off a customer. After the cab driver received his fare from the customer and drove to the nearest intersection, the white Mustang pulled up next to him and the Mustang's driver began cursing at him.  The cab driver ignored the white Mustang and continued driving.  But, at a red light, the white Mustang pulled up to him again.  The Mustang's driver exited the Mustang, walked to the cab, and began banging on the cab's window.  While banging on the window, the Mustang's driver threatened to shoot the cab driver.  The Mustang's driver then returned to the Mustang and retrieved a silver pistol, which he pointed at the cab driver.  After the light turned green, the cab driver drove away and proceeded to search for police officers.

The cab driver found police officers at a local restaurant and informed them about his altercation with the Mustang's driver.  The cab driver told the officers that the Mustang was white and had a Florida license plate.  He also reported to the officers that the Mustang had an Italian flag near the dashboard.  The cab driver described the Mustang's driver as Caucasian with short hair and a clean shaven face.  In addition, he stated that the Mustang's driver was wearing a gray sweater.

3

The officers then told the cab driver to stay nearby until they located the Mustang. Shortly thereafter, the officers directed the cab driver to a gas station. The officers had an individual handcuffed at the gas station. The white Mustang was also at the gas station. The officers asked the cab driver if the handcuffed individual was the Mustang's driver, and the cab driver responded affirmatively.[1] The individual was Mariano.[2]

### 2.  Summary of Apprehending Police Officer's Testimony

Shortly after receiving the cab driver's description of the Mustang and its driver, the police officer found a white Mustang at a gas station and saw an individual fitting the description provided by the cab driver leaving the gas station. The officer requested assistance and for the cab driver to come to the gas station. After the cab driver identified Mariano as the individual who had threatened him with a silver pistol, the officer searched Mariano's person. The officer found car keys for a Ford Mustang in Mariano's pockets. The keys matched the white Mustang parked at the gas station. The officer and another officer then searched the Mustang and found a silver pistol. The Mustang also had an Italian flag hanging from the rearview mirror near the dashboard.

---

[1] This identification procedure is known as a "show-up."

[2] Relevant to Mariano's claim that the district court erred by refusing to offer a jury instruction on cross-racial identification, the cab driver is of Egyptian ethnicity. Prior to trial, Mariano proposed a jury instruction regarding the inaccuracies of cross-racial identification. The court declined to provide the instruction, finding that the Eleventh Circuit's pattern jury instruction on identification was sufficient.

### 3.  DNA Evidence Related to the Silver Pistol

At trial, the prosecution proffered an expert witness to testify about DNA evidence obtained from the silver pistol.  The evidence was derived from testing done by the police department's crime lab.  The results of the testing were inconclusive—the pistol had a mixture of DNAs on it.  However, according to the expert witness, Mariano's DNA could not be excluded as a possible "contributor" to the mixture.[3]

### B. Sentencing

The district court determined Mariano has a base offense level of 24 under § 2K2.1 of the Guidelines.  But, the court enhanced Mariano's sentence pursuant to § 924(e)(1), finding Mariano qualifies for the enhancement because of his prior convictions for third degree burglary under New York Penal Law § 140.20, second degree assault under New York Penal Law § 120.05(02), and resisting an officer with violence under Florida Statutes § 843.01.  Ultimately, the court sentenced Mariano to 18 years' imprisonment.

---

[3] Mariano presented one witness during his defense.  The witness testified that she and two other individuals were in Mariano's car during the altercation with the cab driver. According to the witness, Mariano did not have a silver pistol in his possession at that time.

## II.    DISCUSSION

### A. Challenges to Conviction

Mariano challenges his conviction on a number of grounds.  He asserts the district court committed trial error by admitting the cab driver's testimony, not excluding the DNA evidence related to the silver pistol, and refusing to provide a jury instruction on cross-racial identification.  According to Mariano, these various errors, individually and cumulatively, require us to vacate his sentence.  Mariano also contends his conviction must be vacated due to insufficient evidence.  We address each argument in turn.

### 1.  The District Court Did Not Err by Admitting the Cab Driver's Testimony.

Mariano asserts the cab driver's testimony was derived from an unconstitutional, unduly suggestive out-of-court identification—the show-up at the gas station.[4]  As such, he claims the district court erred in allowing the testimony.

Typically, the constitutionality of an out-of-court identification is reviewed de novo.  *See United States v. Elliot*, 732 F.3d 1307, 1309 (11th Cir. 2013) (per curiam).  However, we review constitutional objections not raised before the district court, such as Mariano's challenge to the cab driver's identification, for plain error.  *See United States v. Moriarty*, 429 F.3d 1012, 1018 (11th Cir. 2005) (per curiam).  Under plain error review, the party raising the challenge bears the

---

[4] Notably, Mariano never challenged the testimony during trial.

burden of establishing that (1) there is an error; (2) the error is plain; (3) the error affects the substantial rights of the defendant; and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1019 (internal quotation marks omitted).

The constitutionality of an out-of-court identification is reviewed under a two-part test. *See Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). We must first "determine whether the original identification procedure was unduly suggestive." *Id*. If unduly suggestive, we "must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable." *Id*. The factors to be considered in determining whether the identification was reliable include: (1) opportunity to view the defendant at the time of the crime; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification.[5] *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S. Ct. 375, 382 (1972).

Assuming arguendo that the show-up at the gas station was unduly suggestive, the district court did not err in admitting the cab driver's testimony because Mariano has not shown that the cab driver's testimony was plainly unreliable. Each of the *Biggers* factors suggests the cab driver's identification was reliable. First, the cab driver had a reasonable opportunity to view Mariano during

---

[5] These factors are known as the "*Biggers* factors."

7

their altercation: Mariano banged on the cab driver's window and, subsequently, Mariano pointed the silver pistol at the cab driver from a relatively short distance. Second, the cab driver "was not a casual or passing observer," rather he directly engaged with Mariano and was the subject of Mariano's threats. *See Manson v. Brathwaite*, 432 U.S. 98, 115, 97 S. Ct. 2243, 2253 (1977). Third, the cab driver's description accurately portrayed Mariano's physical characteristics and clothing. Relatedly, the cab driver provided an accurate description of Mariano's car. Fourth, the cab driver never expressed or otherwise indicated that he was uncertain about his identification of Mariano. Finally, the cab driver gave his description of Mariano to police "within minutes" of the altercation. *See id.* at 115–16, 96 S. Ct. at 2253.

In response to this evidence, Mariano asserts the cab driver gave varying descriptions of the Mustang's driver to police on the night of the altercation and, therefore, the cab driver's identification was unreliable. Specifically, Mariano alleges the cab driver first described the Mustang's driver as having a shaved head then later stated the Mustang's driver had short dark hair. But, this claim is belied by the cab driver's testimony at trial. The cab driver testified that he described the Mustang's driver as "clean shaven," not as having a shaved head. Based on this testimony and the above evidence, we cannot conclude that the cab driver's

identification was obviously unreliable.  Therefore, we find no plain error.  *See Moriarty*, 429 F.3d at 1018.

## 2.  The District Court Did Not Err by Admitting the DNA Testimony.

Mariano next argues the district court erroneously admitted the DNA evidence related to the silver pistol, claiming the evidence did not assist the trier of fact and was both unfairly prejudicial and confusing.

We review the admissibility of expert testimony for abuse of discretion—a standard so deferential that we will not reverse "unless the ruling is manifestly erroneous."  *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (internal quotation marks omitted).  Moreover, we will only reverse an erroneous admission of expert testimony if the error was not harmless.  *See United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir. 2011).  "An error is harmless unless there is a reasonable likelihood that it affected the defendant's substantial rights."  *Id.* (internal quotation marks omitted).

The admissibility of expert testimony turns on whether: (1) "the expert is qualified to testify competently regarding the matters he intends to address"; (2) the expert's methodology is reliable, and (3) "the testimony assists the trier of fact."  *Frazier*, 387 F.3d at 1260.  Although testimony meeting these criteria is generally admissible, it may be excluded under Federal Rule of Evidence 403 if its probative value is substantially outweighed by its potential to confuse or mislead

9

the jury.  *Id*. at 1263.  At the same time, "Rule 403 is an extraordinary remedy which should be used only sparingly"—the balance in making a Rule 403 determination "should be struck in favor of admissibility."  *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990) (internal quotation marks omitted).

Here, the district court did not abuse its discretion in admitting the DNA evidence.  Mariano does not contest the DNA expert's competency or the reliability of the expert's methodology; he only argues that the district court should have excluded the expert's testimony because it did not assist the trier of fact and it implicated Rule 403.  However, these arguments are unavailing.

Under the "assists the trier of fact" admissiblity requirement, relevant "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."  *Frazier*, 387 F.3d at 1261–62.  The DNA expert testified that Mariano was a possible contributor to the mixture of DNA found on the silver pistol.  Providing further guidance to the fact finder, the expert also testified to the probability of Mariano's DNA actually contributing to the mixture.  This evidence was relevant and "concern[ed] matters that are beyond the understanding of the average lay person," as it was scientific evidence that made it "more or less probable" that Mariano possessed the silver pistol.  *See id.* at 1262; Fed. R. Evid. 401.  Therefore, the district court did not abuse its discretion

10

with respect to the "assists the trier of fact" requirement when it admitted the evidence.

Mariano has also failed to show that the district court abused its discretion by not invoking Rule 403 to exclude the expert's testimony. "It is only *unfair* prejudice [or confusion], *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Terzado-Madruga*, 897 F.2d at 1119 (internal quotation marks omitted). Mariano asserts the expert's testimony was "prejudicial and confusing" because the DNA evidence was inconclusive and the evidence revealed "a scientifically certain DNA match to a different person on the" magazine of the silver pistol. However, any prejudice or confusion resulting from these facts does not *substantially* outweigh the probative value of the expert's testimony. Indeed, we are unconvinced that this evidence is prejudicial or confusing at all, and Mariano cites no precedent from this court suggesting otherwise. Moreover, even assuming the DNA evidence was prejudicial or confusing, there is no "reasonable likelihood" that the district court's admission of the evidence "affected [Mariano's] substantial rights." *See Bradley*, 644 F.3d at 1270.

### 3. The District Court Did Not Err in Refusing to Provide a Jury Instruction on Cross-Racial Identification.

Mariano also claims the district court erred in refusing to provide a jury instruction on cross-racial identification. He asserts the instruction was required

11

because he and the cab driver are of different ethnicities and there is a significant risk of inaccurate identification amongst individuals of different ethnicities.

We review a district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. King*, 751 F.3d 1268, 1275 (11th Cir. 2014) (per curiam). A "defendant is entitled to have the jury instructed regarding his theory of defense separate and apart from instructions given on the elements of the charged offense if there has been some evidence adduced at trial relevant to that defense." *Id.* (internal quotation marks omitted). "We view the evidence in the light most favorable to the defendant in determining whether there was a proper evidentiary foundation for the instruction." *Id.*

Here, "no evidence was adduced at trial related to" the ability of a witness to make a cross-racial identification. *See id.* Mariano "did not present any evidence regarding the effect of race on the ability of a witness to make an accurate identification, nor did he cross-examine" the relevant witness—the cab driver—"to determine whether [the cab driver] had difficulty making cross-racial identifications." *See id.* at 1275–76. "Accordingly, [Mariano] failed to adduce a sufficient evidentiary basis for the requested instruction, and the district court did not abuse its discretion in declining to give it." *See id.* at 1275.[6]

---

[6] Given Mariano has not shown any trial errors, his argument regarding cumulative error is without merit. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) (per curiam).

### 4. Sufficient Evidence Supported Mariano's Conviction.

Finally, Mariano contends his conviction was not supported by sufficient evidence. We review de novo the sufficiency of the evidence to support a conviction. *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996). In doing so, we "view[] the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990). In order to uphold the conviction, we "need only find that a reasonable factfinder could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.*

To obtain a conviction for felon in possession of a firearm under § 922(g)(1), "the government must prove . . . three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce." *United States v. Deleveaux*, 205 F.3d 1292, 1296–97 (11th Cir. 2000). At trial, Mariano stipulated to the first and third elements. Thus, the only issue before us is whether the evidence was sufficient to show Mariano knowingly possessed a firearm. The record includes the following evidence relevant to this inquiry: (1) eyewitness testimony that Mariano had actual possession of a silver pistol; (2) testimony from police and the same eyewitness that this pistol was found in Mariano's car; and (3) testimony from a friend of Mariano's that, contrary to the eyewitness's testimony,

13

Mariano did not have possession of any firearms when he came into contact with the eyewitness.  Taking such evidence in the light most favorable to the prosecution, there was sufficient evidence to support a finding that Mariano knowingly possessed a firearm.  Therefore, we uphold Mariano's conviction.

## B. Challenges to Sentence

Mariano asserts the district court erred by sentencing him pursuant to § 924(e)(1) and determining that his base offense level under § 2K2.1 of the Guidelines is 24.  In addition, he asserts his sentence is both procedurally and substantively unreasonable.  We again address each argument in turn.

### 1. The District Court Erred in Sentencing Mariano Pursuant to § 924(e)(1).

Under the ACCA, "a person who violates 18 U.S.C. § 922(g) and has three previous convictions for a violent felony or a serious drug offense is subject to additional fines and a fifteen-year minimum sentence (and has an enhanced guidelines sentence under U.S.S.G. § 4B1.4)." *United States v. Petite*, 703 F.3d 1290, 1293 (11th Cir. 2013) (internal quotation marks omitted); *see also* 18 U.S.C. § 924(e)(1).  The district court found Mariano has three prior convictions for violent felonies: third degree burglary under New York Penal Law § 140.20, second degree assault under New York Penal Law § 120.05(02), and resisting an

14

officer with violence under Florida Statute § 843.01.[7]  Based on this finding, the

court sentenced Mariano pursuant to § 924(e)(1).  Mariano argues that the district

court erred in determining he has three prior convictions for violent felonies.  We

agree.  We hold that Mariano's conviction for third degree burglary under New

York Penal Law § 140.20 does not qualify as a violent felony and, therefore,

Mariano has, at most, two violent felonies under the ACCA.[8]

We review de novo whether a prior conviction is a violent felony under the

ACCA.  *See Petite*, 703 F.3d at 1292.  Prior to the Supreme Court's ruling in

*Johnson*, there were three ways a felony could be classified as a violent felony: the

"elements clause," the "enumerated clause," and the residual clause.  The elements

clause provides that a crime punishable by more than one year constitutes a violent

felony if it "has as an element the use, attempted use, or threatened use of physical

force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  The enumerated

clause includes a felony if it "is burglary, arson, or extortion, [or] involves the use

of explosives."  *Id.* § 924 (e)(2)(B)(ii).  Finally, the residual clause includes any

felony that "otherwise involves conduct that presents a serious potential risk of

physical injury to another."  *Id.*  As noted above, the Supreme Court struck down

---

[7] The district court relied on the "residual clause" of the ACCA in finding that Mariano's burglary conviction qualifies as a violent felony.  After the court sentenced Mariano, the Supreme Court held that the residual clause is unconstitutional.  *Johnson v. United States*, 576 U.S. __, __, 135 S. Ct. 2551, 2557 (2015).  We discuss *Johnson* further below.

[8] We do not address whether Mariano's other two previous convictions constitute violent felonies—such an inquiry is irrelevant to our finding that the district court erred in sentencing Mariano under the ACCA.

the residual clause as unconstitutionally vague in *Johnson*. 135 S. Ct. at 2557. Therefore, an offense now only constitutes a violent felony if it meets the criteria included in the elements or enumerated clause. *See id.* at 2563.

To determine whether the elements or enumerated clause applies to Mariano's burglary conviction, we first look to the statute Mariano was convicted under—New York Penal Law § 140.20. Under § 140.20, a person commits third degree burglary when "he knowingly enters or remains unlawfully in a building with the intent to commit a crime therein." N.Y. Penal Law § 140.20. New York's definition of "building" includes "any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer." N.Y. Penal Law § 140.00. As is apparent, third degree burglary in New York does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. § 924(e)(2)(B)(i) (elements clause). Accordingly, we focus our analysis on whether this conviction falls under the enumerated clause.

The enumerated clause only includes burglary convictions for "generic" burglary. *See Descamps v. United States*, 570 U.S. __, __, 133 S. Ct. 2276, 2281 (2013). Generic burglary is defined as "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 2283

(internal quotation marks omitted).  There are two approaches for determining whether a burglary conviction meets this requirement: the "categorical approach" and the "modified categorical approach."  *See id.* at 2281.

Under the categorical approach, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime."  *Id.* (internal quotation marks omitted).  "The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense."  *Id.*  Mariano's burglary conviction does not qualify as a violent felony under this approach.  The conviction is "non-generic [under the categorical approach] because its definition of 'building,' which includes things such as vehicles and watercraft, is broader than the scope of generic burglary's 'building or structure' element."  *See United States v. Howard*, 742 F.3d 1334, 1343 (11th Cir. 2014).  Therefore, we turn to the modified categorical approach.

Under the modified categorical approach, we may look beyond the statutory elements of the prior conviction and consider a "limited class of documents, such as indictments and jury instructions," to determine whether the conviction was for a generic offense.  *See Descamps*, 133 S. Ct. at 2281.  This approach only applies if the statute in question is "divisible," meaning that it "sets out one or more elements of the offense in the alternative."  *See id.* at 2281, 2283.  Here, even assuming New York Penal Law § 140.20 is divisible, the parties agree that there

17

are no documents or uncontested Presentence Investigation Report facts that provide the details of Mariano's burglary conviction. Thus, we cannot find that the conviction was for a generic offense.

Given Mariano's conviction is not generic under the categorical or modified categorical approach, the enumerated clause does not apply to the conviction, and therefore, the conviction is not a violent felony. As a result, Mariano has, at most, two prior § 924(e)(1) qualifying convictions, and he was incorrectly sentenced under § 924(e)(1). Moreover, relief is warranted, as this error was not harmless. Mariano was convicted under § 922(g)(1), which ordinarily has a statutory maximum sentence of 10 years. *See* 18 U.S.C. § 924(a)(2). But, due to the district court's finding that he has three prior convictions for violent felonies, the court sentenced him to 18 years' imprisonment. To remedy this error, we vacate Mariano's sentence and remand for resentencing without the ACCA enhancement.

## 2. The District Court Did Not Err in Calculating Mariano's Base Offense Level.

Mariano next argues the district court erroneously determined that his base level offense under § 2K2.1 of the Guidelines is 24.[9] A defendant receives a base offense level of 24 if his offense was committed after sustaining at least two prior felony convictions for a "crime of violence." U.S.S.G. § 2K2.1(a)(2). Mariano

---

[9] Because of the district court's ACCA determination, this base offense level was superseded by the ACCA's higher base level. Given our holding that Mariano is not subject to the ACCA's enhancement, his base level under U.S.S.G. § 2K2.1 is relevant.

asserts that he does not have at least two prior convictions for crimes of violence. However, as explained below, his convictions for resisting arrest with violence under Florida Statutes § 843.01 and second degree assault under New York Penal Law § 120.05(02) are crimes of violence.  As such, the district court properly determined he has a base offense level of 24 under § 2K2.1 of the Guidelines.

A federal or state offense that is "punishable by imprisonment for a term exceeding one year" and "has as an element the use, attempted use, or threatened use of physical force against the person of another" is a crime of violence under the Guidelines.  U.S.S.G. § 4B1.2(a).  We have previously held that a conviction for resisting arrest with violence under Florida Statutes § 843.01 is a crime of violence under this provision of the Guidelines.  *See United States v. Romo-Villalobos*, 674 F.3d 1246, 1249 (11th Cir. 2012) (per curiam).  The provision also encompasses Mariano's second degree assault conviction under New York Penal Law § 120.05(02).  Section 120.05(02) states: "a person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."  Clearly, this offense "has as an element the use . . . of physical force against the person of another."  *See* U.S.S.G. § 4B1.2(a).  Thus, Mariano has at least two prior convictions for crimes of violence.

### 3. Mariano's Reasonableness Challenges are Moot.

In light of our finding that Mariano's sentence must be vacated because the district court erroneously sentenced Mariano pursuant to § 924(e)(1), his reasonableness challenges are moot.

## III.    CONCLUSION

Upon review of the record and consideration of the parties' briefs, we affirm Mariano's conviction, but vacate his sentence and remand for resentencing, without the ACCA enhancement.  In resentencing Mariano, the district court shall perform a fresh review of the 18 U.S.C. § 3553(a) factors.  *See United States v. Estrada*, 777 F.3d 1318, 1323 (11th Cir. 2015) (per curiam) (ordering that, on remand for resentencing, "the district court shall consider all appropriate 18 U.S.C. § 3553(a) factors in determining a reasonable sentence").

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

20