[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10486
Non-Argument Calendar
_____

D.C. Docket No. 0:14-cr-60230-WJZ-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AZUBUEZE IKEJIANI,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 30, 2015)

Before HULL, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this direct appeal, Azubueze Ikejiani appeals his conviction and 11-month sentence imposed after pleading guilty to one count of holding misbranded prescription drugs for sale in interstate commerce, in violation of 21 U.S.C. § 331(k).  Following a careful review of the record and briefs, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct

We recount the facts from Ikejiani's factual proffer, his guilty plea colloquy, his sentencing hearing, and the presentence investigation report ("PSI").  Ikejiani is a licensed pharmacist.  In 2006, Ikejiani, through his company Kanec (USA), Inc., manufactured and distributed approximately 240,000 capsules of a product called "XOX For Men" ("XOX") without a prescription.  In March 2007, Canadian health authorities issued a warning and recall of XOX because it contained tadalafil, the active ingredient in the prescription erectile dysfunction drug Cialis. Ikejiani admitted to Food and Drug Administration ("FDA") investigators that he had manufactured and distributed XOX, as well as another product called "Stud Capsule for Men" ("Stud"), but claimed that he had discontinued manufacturing these items by April 2007.

In January 2010, an individual purchased some Stud capsules manufactured and distributed by Ikejiani, ingested one, and suffered an adverse reaction.  On February 5, 2010, that individual reported the adverse reaction to FDA agents and

2

provided them with his remaining Stud capsules. Testing revealed that the Stud capsules contained twice the maximum prescription dosage of sildenafil citrate, the active ingredient in the prescription erectile dysfunction drug Viagra.

In March 2010, the FDA conducted another investigation of Ikejiani. Ikejiani admitted that he manufactured and distributed Stud using raw materials imported from India. While Ikejiani claimed that he did not know that Stud contained active pharmaceutical ingredients, emails recovered pursuant to a search warrant revealed that Ikejiani specifically ordered sildenafil citrate by name in large quantities for various shipments. FDA investigators advised Ikejiani to stop selling products that contained sildenafil citrate and tadalafil, and Ikejiani assured them that he would no longer sell or distribute such products.

Nevertheless, in December 2010, the FDA discovered that Ikejiani continued to manufacture and distribute a product called "Nite Rider," which contained sildenafil citrate. On January 7, 2011, FDA investigators interviewed Ikejiani again. Ikejiani admitted to the continuing manufacture and sale of Nite Rider, but denied putting any active pharmaceutical ingredients in his products. Ultimately, investigators recovered invoices proving that, between 2007 and 2010, Ikejiani sold $413,428 worth of products containing sildenafil citrate and tadalafil to wholesale customers without a prescription.

**B.    Criminal Information and Guilty Plea**

On September 19, 2014, the government charged Ikejiani by criminal information with one count of holding misbranded drugs for sale in interstate commerce with intent to defraud, in violation of 21 U.S.C. § 331(k).  Ikejiani initially pleaded not guilty, but later pleaded guilty without the benefit of a plea agreement.

At a November 7, 2014 change of plea hearing, the district court placed Ikejiani under oath and informed him that he could be prosecuted for perjury if he made any false statements.  Ikejiani testified that he understood the purpose of the hearing, read the criminal information in its entirety, understood the charges against him him, discussed the evidence with his attorney, and understood everything his attorney had told him about the case.  The court then read the criminal information aloud, and Ikejiani confirmed that he understood the charge against him.

Ikejiani also confirmed that he read the written factual proffer in its entirety and signed it.  Moreover, the factual proffer was explained by Ikejiani's attorney, Ikejiani understood everything in it, and Ikejiani confirmed that all of the facts set forth therein were true and accurate.  The district court then informed Ikejiani of the consequences of pleading guilty, including the forfeiture of several rights.  The

4

district court ultimately accepted Ikejiani's guilty plea and adjudicated him guilty of the charged offense.

## C.    Sentencing

The PSI recommended a base offense level of six, pursuant to U.S.S.G. § 2N2.1(c)(1).  The PSI added to that base offense level: (1) a 14-level increase because the loss value was more than $400,000 but less than $1,000,000, § 2B1.1(b)(1)(H); (2) a two-level increase because the offense involved ten or more victims, § 2B1.1(b)(2)(A); (3) a two-level increase because the offense involved the conscious risk of death or serious bodily injury, § 2B1.1(b)(15)(A); (4) a two-level increase because Ikejiani abused a position of trust or used a special skill in the commission or concealment of the offense, § 3B1.3; and (5) a three-level reduction for acceptance of responsibility and cooperation with authorities, § 3E1.1(a) and (b).

Ikejiani's total adjusted offense level was 23.  Based on this total offense level and a criminal history category of I, Ikejiani's advisory guidelines range was 46 to 57 months' imprisonment.  However, because the statutory maximum term of imprisonment was 1 year, the advisory guidelines range became 12 months, pursuant to U.S.S.G. § 5G1.1(a).

At sentencing, Ikejiani's counsel requested a sentence that did not include a term of confinement.  In support of his request, Ikejiani's counsel noted that he

5

accepted full responsibility for his crime and was fully cooperative with the government. Ikejiani's counsel further noted that nobody suffered great bodily harm from consuming Ikejiani's products, but did not explicitly object to the enhancements in the PSI.

Ikejiani's counsel also argued that Ikejiani's personal history and background weighed in favor of non-confinement. Specifically, Ikejiani was forced into military service as a teenager during a Nigerian civil war, had been law abiding for the four or five years after the offense conduct, did not pose a risk of harm to the public, was not a violent individual, and was the sole provider for his large family.

Ikejiani personally addressed the court and apologized for his actions. The district court asked questions regarding the health risk that Ikejiani's misbranded products posed, and Ikejiani acknowledged the risk and apologized. Ikejiani then informed the court that he suffered from benign prostate hyperplasia, supported his children in college, and volunteered for disaster relief efforts.

The government requested the maximum 12-months' imprisonment sentence, emphasizing the seriousness of Ikejiani's offense, his specialized knowledge, and his repeated fraudulent behavior.

The district court adopted the factual findings and advisory guidelines calculations contained in the PSI, and stated that it had considered the facts and

circumstances surrounding the offense, the statements of the parties, the applicable advisory guidelines range, and the statutory factors set forth at 18 U.S.C. § 3553(a). The district court sentenced Ikejiani to serve 11 months' imprisonment—a sentence one month below Ikejiani's advisory guidelines range—followed by one year of supervised release. The district court also imposed an $11,000 fine.

After pronouncement of his sentence, Ikejiani asked once again for a non-custodial sentence, but the court declined to alter the sentence. Ikejiani had no objections to the manner in which the sentence was imposed. The district court stated that the 11-month sentence promoted respect for the law, deterred future criminal conduct, and provided just punishment.

## II. DISCUSSION

### A.    Ikejiani's "Dispensed" Argument

Defendant Ikejiani argues for the first time on appeal that his guilty plea must be vacated because, as a wholesaler, he is innocent of the charged conduct. Ikejiani's argument turns on the use of the word "dispensed" in 21 U.S.C.

§ 353(b)(1), which, he argues, is limited to distribution to the end user by virtue of the definition of "dispensed" given in 21 U.S.C. § 802(10).[1]

We apply plain error review when a defendant failed to raise an argument in the district court. United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014). To demonstrate plain error, the defendant must show that there is (1) error, (2) that is plain and (3) that affects substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

Federal law prohibits "the doing of any . . . act with respect to. . . [a] drug . . . if such act is done while such [drug] is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded." 21 U.S.C. § 331(k). "The act of dispensing a drug [without a prescription] shall be deemed to be an act which results in the drug being misbranded while held for sale." Id. § 353(b)(1).

---

[1]21 U.S.C. § 802 provides: "As used in this subchapter . . . [t]he term dispense means to deliver a controlled substance to an ultimate user." 21 U.S.C. § 802(10) (emphasis added). Section 802 appears in Title 21, Chapter 13, Subchapter I, while the charged offense appears in Title 21, Chapter 9, Subchapter III. Accordingly, it is not clear how the definition of "dispense" in § 802, which is expressly limited to its use in Chapter 13, Subchapter I, has any bearing on the construction and interpretation of the term "dispensing" as used in § 353. In any event, as discussed below, Ikejiani's argument is squarely foreclosed by binding precedent.

In the context of a 21 U.S.C. § 331(k) prosecution, this Court's predecessor held that the term "dispensing," as used in § 353(b)(1), applies to all sales, including wholesale sales, and not merely to sales to end users. United States v. De Freese, 270 F.2d 730, 736 (5th Cir. 1959). The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). This Court is bound to follow prior binding precedent until it is overruled by this Court sitting en banc or by the United States Supreme Court. United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008).

Here, the district court did not plainly err by accepting Ikejiani's guilty plea. This Court's predecessor rejected Ikejiani's argument long ago in a precedential decision that has not been overruled. De Freese, 270 F.2d at 736. Specifically, the former Fifth Circuit held that "the fact that the crime . . . is wholesale, instead of retail, gives [the defendant] no special claim to immunity." Id. at 737. We are bound to follow this precedent. Vega-Castillo, 540 F.3d at 1236. Accordingly, even though Ikejiani was a wholesale seller, he was properly charged under 21 U.S.C. § 331(k), and the district court committed no plain error by accepting his guilty plea.

9

**B.    Guilty Plea and Rule 11**

Defendant Ikejiani next argues for the first time on appeal that the district court did not conduct a proper guilty plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure.  Specifically, the district court (1) failed to properly inform Ikejiani of the nature of the charges to which he pleaded guilty, and (2) accepted Ikejiani's guilty plea without a proper factual basis supporting the charge.

We review the issue of a violation of Rule 11 for plain error when it was not raised before the district court.  United States v. James, 210 F.3d 1342, 1343 (11th Cir. 2000).

Before accepting a guilty plea, a district court must ensure that the defendant understands the nature of the charge.  See Fed. R. Crim. P. 11; James, 210 F.3d at 1344.  There is no one mechanical or precise juncture to which a district judge must conform in advising a defendant of the nature of the charges to which he is pleading guilty.  James, 210 F.3d at 1344.  We review on a case-by-case basis whether the district court adequately ensured that a defendant understood the nature of the charge.  Id.  For simple charges, a reading of the indictment, followed by an opportunity for the defendant to ask questions about the indictment, will usually suffice.  Id. at 1345.

A district court must also determine that there is a factual basis for the plea before accepting it.  Fed. R. Crim. P. 11(b)(3); United States v. Frye, 402 F.3d

10

1123, 1128 (11th Cir. 2005)  The purpose of this requirement is to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading.  Frye, 402 F.3d at 1128.  The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty.  Id.

Here, the district court did not plainly err while conducting Ikejiani's guilty plea colloquy.  The district court recited verbatim the single count of the criminal information (to which Ikejiani pled guilty) to Ikejiani in open court.  Ikejiani stated that he fully understood the charge against him and had no questions for the court.  This process sufficiently ensured that Ikejiani understood the nature of the charge against him.  James, 210 F.3d at 1344-45.

Additionally, the district court was presented with a sufficient factual basis for accepting Ikejiani's guilty plea.  Specifically, the district court considered Ikejiani's signed factual proffer and ensured that the facts set forth therein were truthful and accurate.  The factual proffer provided that on several occasions Ikejiani dispensed mislabeled products containing the drugs sildenafil citrate and

tadalafil into interstate commerce without a prescription.[2]  Accordingly, the district court was presented with evidence from which it could reasonably find that Ikejiani was guilty.  Frye, 402 F.3d at 1128.

In sum, the district court did not plainly err in following the requirements of Rule 11.

## C.    Sentencing Enhancements

Defendant Ikejiani next argues for the first time on appeal that the enhancements the district court applied to his Sentencing Guidelines calculations violated his Sixth Amendment right to a jury trial and his Fifth Amendment right to a grand jury indictment.  He further argues for the first time on appeal that there was no evidence to support his victim number and bodily injury enhancements under §§ 2B1.1(b)(2)(A) and  2B1.1(b)(15)(A).

### 1. Constitutional Claims

Sentencing enhancements that do not increase the statutory minimum or maximum term of imprisonment that a defendant faces need not be charged in an indictment and submitted to a jury.  See United States v. King, 751 F.3d 1268, 1278-79 (11th Cir.), cert. denied, 135 S. Ct. 389 (2014).

---

[2]Ikejiani argues that the factual proffer was insufficient by reasserting his argument that, as a wholesaler, he did not "dispense" the drugs as charged in the criminal information. However, as described above, wholesale distribution constitutes "dispensing" for the purposes of charged offense.  See De Freese, 270 F.2d at 736.  Accordingly, the factual proffer, which provided that Ikejiani "distributed [his] products containing  . . . tadalafil and sildenafil citrate without a prescription to [his] wholesale customers," established a sufficient factual basis for the district court to determine that Ikejiani "dispensed" those products.

Here, the district court's ultimate guidelines calculations neither raised Ikejiani's sentence above the one-year statutory maximum, nor raised any applicable statutory minimum. Thus, the district court was not required to submit the facts underlying its guidelines calculations to a jury. See King, 751 F.3d at 1278-79. Accordingly, the district court did not err, much less plainly err, as to Ikejiani's constitutional arguments on appeal.

2. Evidentiary Claims

As noted above, error is not plain unless it affects a defendant's substantial rights. Turner, 474 F.3d at 1276. An error affects a defendant's substantial rights if there is a reasonable probability that, but for the error, the outcome would have been different. United States v. Rodriguez, 398 F.3d 1292, 1299 (11th Cir. 2005). If we determine that an error, if proven, did not affect a defendant's substantial rights, we need not determine whether the district court actually erred. See United States v. Kapordelis, 569 F.3d 1291, 1314 (11th Cir. 2009).

Here, we need not determine whether there was a sufficient evidentiary basis for each of the challenged enhancements, as the district court's error, if any, did not affect Ikejiani's substantial rights. Specifically, if the district court did not apply the challenged enhancements, then Ikejiani's total offense level would have decreased by four levels, to 19. With a total offense level of 19 and a criminal history category of I, Ikejiani's advisory guidelines range would have been 30 to

13

37 months.  However, due to the one-year statutory maximum under 21 U.S.C. § 333(a)(1), and pursuant to U.S.S.G. § 5G1.1(a),  Ikejiani's advisory guidelines range would have still been 12 months.

Accordingly, even if we were to hypothetically conclude that the district court erred by adopting the challenged enhancements, it did not plainly err, as there is no reasonable probability that, but for the error, Ikejiani's sentence would have been different.  Rodriguez, 398 F.3d at 1299; Turner, 474 F.3d at 1276.

**D.    Substantive Reasonableness**

Defendant Ikejiani next argues that his sentence is substantively unreasonable because the district court did not assign enough weight to his mitigation evidence.

We review the reasonableness of a sentence for abuse of discretion.  United States v. Cubero, 754 F.3d 888, 892 (11th Cir.), cert. denied, 135 S. Ct. 764 (2014).  We consider whether a sentence is substantively unreasonable under the totality of the circumstances and in light of the 18 U.S.C. § 3553(a) factors.[3]  Id.

---

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

14

In determining a sentence, a district court must evaluate all of the § 3553(a) factors but can attach "great weight" to one factor over others.  Id.  The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).  As to variances, we have recognized that a "district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate."  Cubero, 754 F.3d at 892 (quotation marks and alteration omitted).  "We give that decision due deference because the district court has an institutional advantage in making sentencing determinations."  Id. (quotation marks omitted).

The party challenging the reasonableness of a sentence on appeal bears the burden to show that it is unreasonable.  Id. at 893.  "We may vacate a sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  Id. at 892-93 (quotation marks omitted).  Although we do not automatically presume a sentence within the advisory guidelines range is reasonable, we ordinarily expect such a sentence to be reasonable.  United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Here, Ikejiani's 11-month custodial sentence was substantively reasonable. The district court listened to the parties' arguments as to the appropriate sentence

15

and stated that it had considered those arguments, the PSI, and the § 3553(a) factors. We cannot say that the district court abused its discretion in finding that a sentence of incarceration was necessary to promote respect for the law, deter future criminal conduct, and provide just punishment under the particular facts of this case. While Ikejiani emphasized his medical issues, family obligations, and humanitarianism, the district court attached great weight to the danger Ikejiani's crime posed to the public. This was an appropriate exercise of discretion, and this Court does not reweigh the § 3553(a) factors. See Clay, 483 F.3d at 743.

Additionally, the district court's 11-month custodial sentence was one month lower than the applicable advisory guidelines range of 12 months, and we would ordinarily expect a sentence within the advisory guidelines range, let alone a sentence one month below, to be reasonable. See Hunt, 526 F.3d at 746.

In sum, Ikejiani has failed to show that the district court abused its discretion by deciding that a sentence of 11 months' imprisonment, rather than a non-custodial sentence, was appropriate in light of the § 3553(a) factors.

## E.    Ineffective Assistance of Counsel

Finally, defendant Ikejiani asserts that his trial counsel rendered ineffective assistance of counsel by failing to inform him that he did not "dispense" the drugs within the meaning of the charged criminal statute, thus allowing him to plead guilty to a crime he did not commit. Ikejiani further asserts that his trial counsel

16

failed to object to the PSI and failed to challenge the district court's sentencing enhancements.  He argues that these failures, individually and in combination, caused undue prejudice.

Generally, the record is not sufficiently developed on direct appeal to allow meaningful review of ineffective assistance claims.  See United States v. Merrill, 513 F.3d 1293, 1308 (11th Cir. 2008).  Rather, such claims would best be presented in a collateral attack on the conviction under 28 U.S.C. § 2255, where the district court may develop a record related to those issues.  See Massaro v. United States, 538 U.S. 500, 504-05, 123 S. Ct. 1690, 1694 (2003).

Here, we decline to consider Ikejiani's ineffective assistance claims on direct appeal, as the district court did not have the opportunity to develop a record on the issue.  See id.

## III.  CONCLUSION

For the foregoing reasons, we affirm defendant Ikejiani's conviction and sentence.

**AFFIRMED.**