[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14915
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00016-MHT-SRW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NINA MCKINNIE MACENA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 9, 2016)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Nina M. Macena appeals her convictions for wire fraud, in violation of 18 U.S.C. § 1343, aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2, and conspiring to file false claims, in violation of 18 U.S.C. § 286. Defendant Macena's convictions arise out of a tax fraud scheme using the stolen personal information of inmates at the Dothan City Jail. According to the trial evidence, Defendant Macena acted as a go-between in the scheme. In this role, Defendant Macena obtained Dothan City Jail docket sheets from Roderick Neal, a bail bondsman who stole them from his employer. The docket sheets contained personal information, such as dates of birth and social security numbers. Defendant Macena then gave the docket sheets to Ivory Bolen, who used the personal information on them to prepare and electronically file fraudulent tax returns.

On appeal, Macena argues that the district court erred by denying Macena's motion for a judgment of acquittal. Defendant Macena contends that the government failed to prove that she knew what Bolen was doing with the docket sheets or that Macena herself was involved in filing the fraudulent tax returns. Defendant Macena contends that the trial testimony of Bolen and Neal about Macena's knowledge of the scheme was not credible. After review, we affirm.

## I.  RULE 29(a) JUDGMENT OF AQUITTAL

Under Federal Rule of Criminal Procedure 29(a), the district court "on the defendant's motion[,] must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  We review both the denial of a motion for a judgment of acquittal and the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict.  United States v. Martin, 803 F.3d 581, 587 (11th Cir. 2015).  We will affirm a conviction "if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  Id. (quotation marks and alteration omitted).

## II.  ELEMENTS OF MACENA'S OFFENSES

To convict a defendant of a false claims conspiracy to defraud the government under 18 U.S.C. § 286, the government must prove "the existence of an agreement to achieve an unlawful objective, the defendant's knowing and voluntary participation in the conspiracy, and the commission of an overt act in furtherance of it."  United States v. Baldwin, 774 F.3d 711, 721 (11th Cir. 2014) (quotation marks omitted), cert. denied, 135 S. Ct. 1882 (2015).  The unlawful objective of a § 286 conspiracy is to defraud the federal government "by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent

3

claim[.]" 18 U.S.C. § 286. The extent of knowledge of details in the conspiracy does not matter if the proof shows the defendant knew the essential objective of the conspiracy. Baldwin, 774 F.3d at 721.

To convict a defendant of wire fraud under 18 U.S.C. § 1343, the government must prove that the defendant: (1) participated in a scheme or artifice to defraud; (2) with the intent to defraud; and (3) used, or caused the use of, interstate wire transmissions for the purpose of executing the scheme or artifice to defraud. Martin, 803 F.3d at 588. Wire fraud can be proved by circumstantial evidence. Id. A person "causes" the wires to be used within the meaning of 18 U.S.C. § 1343, when he acts with knowledge that the use of the wires will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended. United States v. Ward, 486 F.3d 1212, 1222 (11th Cir. 2007).

To convict a defendant of aggravated identity theft under 18 U.S.C. § 1028A, the government must prove that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in § 1028A(c). United States v. Barrington, 648 F.3d 1178, 1192 (11th Cir. 2011). Wire fraud is one of the enumerated felonies in § 1028A(c). 18 U.S.C. § 1028A(c)(5). With respect to mens rea, the government must also show that the defendant knew the

4

means of identification at issue belonged to another person.  United States v. Doe, 661 F.3d 550, 561 (11th Cir. 2011).

## II.  SUFFICIENCY OF THE TRIAL EVIDENCE

Here, the trial evidence, viewed in the light most favorable to the government, amply supported the jury's verdict on all offense counts.  At trial, Bolen testified that she was involved in preparing false tax returns using stolen identities.  Bolen filed the tax returns electronically and received the resulting refunds through prepaid debit cards.  Bolen initially approached Defendant Macena and asked her to provide Bolen with mailing addresses Bolen could use to receive the debit cards containing the tax refunds.  Defendant Macena agreed, providing Bolen between five and ten addresses.  When none of those addresses received a debit card, Bolen explained to Defendant Macena that the scheme was like "playing a lottery," and that only some of the tax returns would "go through."

Later, Defendant Macena asked Bolen if she would prepare tax returns for Macena.  Bolen agreed to do so, but only if Defendant Macena provided the personal information used to prepare the returns.  Over time, Defendant Macena provided Bolen between 50 and 100 docket sheets from the Dothan City Jail, which Defendant Macena told Bolen that Macena had obtained from a man named Neal.  The docket sheets contained inmates' personal information, such as social security numbers and dates of birth, which Bolen used to file false tax returns.

5

Bolen said she and Defendant Macena agreed to split the refunds generated from the false returns evenly.

Neal, Defendant Macena's accomplice at the bail bonding company, also testified. According to Neal, Defendant Macena approached him to obtain the docket sheets for Bolen, whom Macena described as "a friend that did income tax." In exchange, Defendant Macena agreed to give Neal a piece of the refunds. Neal gave Defendant Macena docket sheets on five or six occasions, but never met Bolen. Later, Defendant Macena contacted Neal asking for more docket sheets because Bolen knew someone who wanted them.

At some point, Bolen began cooperating with Internal Revenue Service investigators. Special Agent Louie Wilson testified that Bolen made several recorded telephone calls to Defendant Macena. During these recorded calls, Defendant Macena, among other things, (1) agreed to get Bolen more "names" so that Bolen could sell them to another person as a "quick flip"; (2) expressed concerns about some of the names not "going through" or being "repeats"; (3) advised Bolen that her "friend" at the bonding company was going to get some "fresh sheets" and that Macena had warned him that sheets with the birthdates redacted where "no good" because they needed birthdates; and (4) stated that she had hidden some of the sheets Neal had given her in storage.

6

Special Agent Wilson also testified that a search of Defendant Macena's storage locker found items commonly associated with stolen identity refund fraud, including debit cards with names that also appeared on Dothan City Jail records. In a post-arrest interview, Defendant Macena admitted to Special Agent Wilson that Bolen "approached her about filing false tax returns and asked [Macena] to contact Mr. Neal at the bail bonding company to see if he could provide them with names that could be used to file these false tax returns." Defendant Macena further admitted: (1) obtaining names from Neal for Bolen; (2) splitting the funds from one prepaid debit card with Bolen; (3) receiving telephone calls from Bolen asking for more names that Bolen could sell to someone else; and (4) attempting to contact Neal to try to get more names for Bolen.

From the above evidence, a reasonable jury could readily conclude beyond a reasonable doubt that Defendant Macena knew she was participating in a stolen identity tax refund fraud scheme. According to the testimony of Bolen, Neal, and Special Agent Wilson, Defendant Macena was fully aware that the docket sheets she got from Neal and gave to Bolen were used to prepare unauthorized tax returns with the goal of receiving fraudulent tax refunds issued on prepaid debit cards. Indeed, Bolen explained the scheme to Defendant Macena, who then explained it to Neal. Moreover, Defendant Macena's own statements made during the recorded calls with Bolen indicate that she was well aware of the nature of the scheme.

Notably, in addition to all of the evidence discussed above, Defendant Macena elected to testify in her own defense. At trial, Macena said that Bolen never explained to her how Bolen was using the docket sheets and said that Bolen gave her funds from debit cards for doing Bolen "a favor." Macena claimed that she did not understand what Bolen was referring to in their recorded telephone calls and merely said what she thought Bolen wanted to hear. The jury, however, was free to disbelieve Macena and find that in fact the opposite was true. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) (explaining that a defendant's testimony, "if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt").

Defendant Macena's arguments about the credibility of Bolen and Neal are unavailing because their testimony was not "unbelievable on its face." See United States v. Thompson, 422 F.3d 1285, 1291-92 (11th Cir. 2005). Nor has Defendant Macena identified any facts that would render their testimony impossible under the laws of nature. See id. Both Neal's and Bolen's possible incentives to lie were brought out on cross examination. The jury was free to disbelieve the two government witnesses, but obviously did not do so. See United States v. Calderon, 127 F.3d 1314, 1324-25 (11th Cir. 1997) (rejecting an attack on the credibility of witnesses who were convicted felons cooperating with the government). Because

8

neither Bolen's nor Neal's testimony was incredible as a matter of law, the Court must accept the jury's credibility findings. See id.

Finally, Defendant Macena appears to contend the government failed to prove she committed wire fraud because she was not involved with filing the tax returns and did not know Bolen was using interstate wires to file the tax returns. The government, however, did not need to prove that Macena personally used interstate wires. Rather, by proving that Defendant Macena gave Bolen the stolen docket sheets knowing that Bolen would use them to prepare and submit fraudulent tax returns, the government proved that Macena "caused the use" of wires by obtaining the docket sheets for Bolen. See Ward, 486 F.3d at 1222. Bolen testified that she filed the returns electronically. Even if Defendant Macena was unaware of the exact method Bolen used to conduct the refund fraud, it was reasonably foreseeable that the submission of a large number of fraudulent tax returns would be done electronically. See id. (explaining that the use of wires need only be reasonably foreseeable).[1]

In sum, there was ample evidence from which the jury could conclude beyond a reasonable doubt that Macena was guilty of wire fraud, aggravated

---

[1]In the summary of the argument and the final conclusion, Macena's brief states that to convict her of aggravated identity theft, the government needed to prove that she was aware that the identifications used in the fraud scheme belonged to other people. Because Macena's brief provides no further argument or analysis, however, she has abandoned this issue. See United States v. King, 751 F.3d 1268, 1277 (11th Cir.), cert. denied, 135 S. Ct. 389 (2014) (explaining that mere terse statements in a brief are insufficient to raise an issue on appeal).

identity theft, and conspiracy to defraud the government by filing false claims. Accordingly, the district court did not err in denying Macena's motions for a judgment of acquittal.[2]

**AFFIRMED.**

---

[2]Defendant Macena does not appeal her 34-month sentence.