[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11211
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cr-00382-JSM-AAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DERRICK COLEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 6, 2021)

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Derrick Coleman appeals his conviction and 220-month sentence for bank

robbery. He argues that (1) there was insufficient evidence to support his conviction;

(2) the district court erred in denying his motion to suppress a photo array; (3) the district court abused its discretion in admitting testimony concerning domestic abuse; (4) the district court erred in refusing to give his defense theory jury instruction; and (5) his sentence was unreasonable. After careful review, we conclude that these challenges are without merit. Accordingly, we affirm.

## I.

On a typical morning at the Chase Bank in Tarpon Springs, Florida, a man dressed in a hat, coat, and tie approached a bank teller, Mary Argeras. After a brief casual conversation about the bank's services, the man placed a bag on the teller counter, told Argeras he had a gun, and demanded money. Argeras explained to the robber that she could only retrieve money from the dispenser at her desk as there was no bank vault. Argeras proceeded to dispense money from the dispenser in increments of $1,000, composed of a variety of denominations. The disbursement of the cash was a slow process, and the robber grew increasingly anxious as he waited. After the fifth increment of $1,000 was dispensed, the robber demanded that the teller place the $5,000 in his bag. The robber, later identified as Derrick Coleman, then left the bank and returned to his home where he lived with his then girlfriend, Birgit Baston. That day, Coleman confessed to Baston that he had robbed the Chase Bank.

Eight months later, a friend of Baston reported Coleman to police for the robbery. Police followed this tip by speaking with Baston over the phone, who informed the police of Coleman's confession on the day of the robbery. During this call, Baston shared several details she had learned about the robbery from Coleman which had not been released to the public. These details included: that Coleman had parked his car where there were no cameras, there had been only a few people in the lobby when he walked into the bank, he had approached a female teller, the dispensing of the money was a slow process, and he had left the bank with $5,000. Soon after, a federal grand jury indicted Coleman for a single count of bank robbery in violation of 18 U.S.C. §2113(a).

Prior to trial, Coleman filed a motion to prevent testimony by Baston concerning two instances of domestic violence allegedly committed by Coleman. The first incident occurred in Germany just a few weeks after the robbery, where Coleman is alleged to have verbally and physically assaulted Baston. Baston reported this incident to German authorities at the time, though no further action was taken. Coleman moved out of their shared home a few months later, though he and Baston remained a couple. About two months after Coleman had moved out, Coleman allegedly attempted to force his way into Baston's home. Baston, fearing for her safety, alerted police about this event. While discussing this matter with

3

police, she informed an officer about Coleman's involvement in the bank robbery. The police did not follow up on Baston's statement related to the robbery.

Coleman argued that this testimony would be highly prejudicial and was largely irrelevant to the robbery. The government responded by arguing that testimony was essential to explain why Baston delayed reporting the robbery to police – a legitimate fear of Coleman.

The district court denied Coleman's motion to exclude the domestic violence testimony. In doing so, the court concluded that the defense was highly likely to attempt to undermine Baston's credibility by pointing out her delay in reporting Coleman's confession of the robbery. The court then reasoned that the testimony of domestic violence would be highly relevant in explaining why Baston delayed reporting Coleman for several months.

Coleman also moved to exclude the bank teller's identification of Coleman in a photo array. Detective Derek Anderson, who administered the photo array and who knew Coleman to be the suspect, generated five "filler" photographs using a computer program with inputs of Coleman's age and race. Four of the photos, including Coleman's, had a tan background while two had a blue background. Before administering the lineup, the detective read the bank teller instructions from the "sequential photo array form" and advised her to disregard background colors. Argeras then looked at each picture sequentially and was able to control the amount

4

of time she looked at each picture. Argeras selected Coleman's photograph out of the lineup. Although Argeras did not provide a confidence statement, Detective Anderson testified that Argeras stated that she was "positive" about her identification. Argeras and Detective Anderson both denied that any suggestive gestures or cues, intentional or otherwise, occurred during administration of the array.

Coleman argued that the identification was unreliable, primarily because Detective Anderson failed to administer the array blindly and thereby created the potential for the officer to provide cues to Argeras, whether done consciously or not. Coleman also took issue with the fact that Detective Anderson did not take a confidence statement from Argeras, that the administration was not recorded, and that pictures were presented in a suggestive manner. The government denied that there was any evidence that the administration process was unduly suggestive.

After hearing testimony related to the identity evidence, the district court determined that the identification procedure was not unduly suggestive. Accordingly, the court denied the motion to suppress.

Prior to trial, Coleman requested the following jury instruction:

> "It is Mr. Coleman's position that he did not commit the robbery at Chase Bank on June 30, 2018. It is his position that a government witness has falsely accused him for motives of their own and he was misidentified due to the disregard of law enforcement policy.

If you believe that the United States Government has not proven beyond a reasonable doubt that it was Mr. Coleman and not someone else who robbed the bank on June 30, 2018, then you must find Mr. Coleman not guilty."

The court denied this request, stating that the proposed instructions were a factual argument rather than a statement or instruction of law.

The trial took place over two days. Argeras recounted the events of the robbery and her later photo identification of Coleman. The government showed her Coleman's photo in court, and Argeras testified that she chose that photo because "[t]hat was the person who was in front of me the day of the robbery. It brought me back to that day." Detective Anderson also testified and discussed his administration of the photo array, again denying that he influenced Argeras's decision. Detective Anderson further testified that later that day he assisted in arresting Coleman, who had with him a pair of glasses which appeared to be the same glasses worn by the suspect in the surveillance video. Coleman argued throughout the proceedings that the administration of the photo array was unduly suggestive.

Baston testified that Coleman had confessed to her on the day of the robbery, but she did not immediately report it because she both loved and feared Coleman. She described her on and off relationship with Coleman, including accounts of chronic emotional abuse and intimidation. She further specified the two incidents of domestic violence which Coleman had previously sought to suppress. Baston also identified Coleman as the man in surveillance video from the bank. Coleman

6

asserted during opening arguments that Baston was framing him after she found him with another woman shortly before the robbery was reported.

After the government rested its case, Coleman moved for a judgment of acquittal based on insufficient evidence, which the court denied. After resting, Coleman renewed his judgment of acquittal, which was again denied. After deliberations, the jury found Coleman guilty.

In the presentence investigation report, the probation officer calculated Coleman's guideline range as 210 to 240 months' imprisonment based on a total offense level of 32, a criminal history category of VI, and a maximum statutory term of 20 years. The PSI detailed Coleman's mental health history, including the following: treatment for Post-Traumatic Stress Disorder ("PTSD") after an inmate assaulted him, court-ordered therapy for ongoing depression and anxiety, participation in mental health counseling with an emphasis on sex offender treatment, and a history of drug and alcohol use. Coleman did not object to the PSI, but filed a sentencing memorandum, which noted a psychiatric evaluation and his history of mental health issues.

At sentencing, the court adopted the PSI's findings and guideline calculations. Coleman requested appropriate mental health treatment while in prison. The government argued for a sentence of 240 months, stressing the need to protect the public from Coleman given his history of bank robberies. The court stated that it

considered the arguments at sentencing, the PSI, the 18 U.S.C. § 3553(a) factors, and the advisory guidelines, and then sentenced Coleman to 220 months' imprisonment. The court also ordered Coleman to participate in a substance abuse program and a mental health treatment program. Coleman did not object to the sentence.

Coleman timely appealed.

## II.

### A.    Sufficiency of the Evidence

We review *de novo* whether sufficient evidence supports a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable factual inferences from the evidence in favor of the government. *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010). Evidence is sufficient if a reasonable trier of fact could find that it established guilt beyond a reasonable doubt. *United States v. Beckles*, 565 F.3d 832, 840–41 (11th Cir. 2009). We will not overturn a conviction if "any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991).

Finally, it is for the jury to determine the credibility of witness testimony, and "we assume the jury made all credibility choices in support of the verdict." *United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009). We will not review the

jury's credibility determination unless such testimony is incredible as a matter of law. *United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014). Testimony is incredible when it is unbelievable on its face, such as where the witness could not have possibly observed certain events or the events are contrary to the laws of nature. *Id*.

Coleman first argues that there was insufficient evidence to convict him of bank robbery under 18 U.S.C. § 2113(a). Specifically, Coleman disputes that there was adequate evidence to establish his identity. In support, Coleman points to the lack of direct forensic evidence linking him to the robbery. He also asserts that witness testimony relied on by the government to establish Coleman as the robber was unreliable. He notes that Argeras identified him only in a photo line-up and never in open court. In addition, he contends that Baston's testimony was unreliable as she had motive to frame him. The government argues that despite a lack of forensic evidence, there was ample evidence for a reasonable jury to infer Coleman's guilt and that the jury was entitled to determine the credibility of witnesses.

An individual is guilty of bank robbery under 18 U.S.C. § 2113(a) if he "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any property or money or any other thing of value belonging to [a bank,]" or he "enters or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank." 18 U.S.C. § 2113(a). Although no

9

forensic evidence in the form of DNA or fingerprints existed to identify Coleman as the robber, several other lines of evidence adequately established Coleman's identity. Argeras identified Coleman as the robber in a photo lineup and later testified during trial. Coleman is correct in his assertion that he was never identified by Argeras in open court. However, she was never asked to do so by either the government or the defense. The jury chose to believe her identification of Coleman in the photo lineup, and they were entitled to do so. See *Jiminez*, 564 F.3d at 1285.

Coleman's ex-girlfriend, Baston, also testified that Coleman had confessed to her that he had robbed the Chase Bank on the day in question. During the investigation, Baston reported during police questioning several details about the robbery that had not been disclosed to the public. Baston also identified Coleman as the man in the picture captured by surveillance footage of the robbery. Coleman argues that Baston's testimony was false and that she had motive to frame him after she found him with another woman. He also notes the length of time between the robbery and Baston's report to police. The jury, however, found Baston to be a credible witness in reaching the guilty verdict, and we will not disturb a jury's reasonable determination that a witness is credible.

Viewed in the light most favorable to the government, there was sufficient evidence to enable a jury to find Coleman guilty beyond a reasonable doubt. Accordingly, we affirm Coleman's conviction.

10

### B.    Denial of Motion to Suppress Photo Array

Coleman next argues that the district court erred in denying his motion to suppress the photo array. We review for clear error the district court's conclusion that an identification procedure was not unduly suggestive. *United States v. Smith*, 967 F.3d 1196, 1203 (11th Cir. 2020).

When a photo lineup procedure is suggestive and causes eyewitness identification to be unreliable, the identification is inadmissible as a matter of law. *See id.* "[A]n identification must be excluded only if the identification procedure created 'a very substantial likelihood of irreparable misidentification' *and* the identification did not contain sufficient indicia of reliability. *United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012)). We use a two-step process to determine whether an out-of-court identification was improperly admitted. *United States v. Perkins*, 787 F.3d 1329, 1344 (11th Cir. 2015). "First, we ask whether the original identification procedure was unduly suggestive." *Id.* (quoting *United States v. Brown*, 441 F.3d 1330, 1350 (11th Cir. 2006)). The size of the array, the manner of its presentation, and the details of the photographs are all relevant when determining whether a photo array was unduly suggestive. *Id.* If we determine that the array was unduly suggestive, then we consider "whether, under the totality of the circumstances, the identification was

11

nonetheless reliable." *Id.* (quoting *Brown*, 441 F.3d at 1350) (internal quotations omitted).

Coleman argues that the manner by which the photo array was presented to Argeras was unduly suggestive. Coleman takes issue with the fact that Detective Anderson did not administer the array blindly, did not record the process, and did not obtain a confidence statement from Argeras. Regarding the lack of blind administration, Coleman argues that this was contrary to both Department of Justice policy and the policy of the police department.

Here, Coleman's photograph was picked out of a six-photograph array. Each photo was the same size and filler photos were generated through a computer program with inputs of Coleman's race and age. Although not all background colors were the same in each photo, Coleman's photo had the same background color as three other photos in the array. Furthermore, the detective who administered the array instructed Argeras that she should disregard the background colors.

During the suppression hearing, Detective Anderson and Argeras's account of how the array was administered varied to some extent. They both agreed, however, that the detective allowed Argeras to control how long she looked at each photo and that the detective did not do or say anything which might have indicated who the suspect was. Coleman failed to put forth any specific evidence of suggestiveness, through non-verbal cues or otherwise, to contradict their testimony.

Instead, he asks this Court to speculate that such evidence exists, which we will not do. Coleman also failed to cite any legal authority to show that non-blind administration alone can establish undue suggestion. In fact, a prior unpublished decision by this Court suggests that it does not. *See United States v. Smith*, 148 F. App'x. 867, 874 (11th Cir. 2005) (holding that photo lineup was not unduly suggestive solely because detective's knowledge of the identity of the suspect presented *potential* for nonverbal cues). Finally, although Detective Anderson admits to failing to ascertain the teller's percentage of certainty, he did testify that the Argeras had stated that she was "positive" that the person she identified was the robber.

For those reasons, the district court did not clearly err in determining that the photo array was not unduly suggestive, and we affirm its decision to admit the out-of-court identification.

### C.     Denial of Motion to Suppress Domestic Violence Testimony

Coleman next challenges the district court's denial of his motion to suppress Baston's testimony about his prior instances of domestic violence under Federal Rule of Evidence 403. We review Rule 403 determinations for abuse of discretion. *United States v. Jernigan*, 341 F.3d 1273, 1284 (11th Cir. 2003). "In reviewing issues under Rule 403, we 'look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its prejudicial impact.'"

13

*United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)).

Federal Rule of Evidence 403 states that district courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403 is an extraordinary remedy that should be used only sparingly. *See United States v. Shabazz*, 887 F.3d 1204, 1216 (11th Cir. 2018). We ask whether the "evidence was dragged in by the heels solely for prejudicial impact." *United States v. Wilson*, 788 F.3d 1298, 1314 (11th Cir. 2015) (quotation marks omitted).

Coleman argues that Baston's testimony regarding domestic abuse should have been excluded as the probative value was substantially outweighed by the danger of unfair prejudice. He asserts that the testimony was particularly harmful where he exercised his right to remain silent and the testimony went unrebutted. In response, the government argues that the domestic abuse precipitated Baston's phone call to police where she informed the police that Coleman had confessed to the robbery and explained Baston's delayed reporting. Additionally, the government notes that Coleman was the first to put the delay in reporting at issue during trial.

Here, the district court did not abuse its discretion by allowing Baston's testimony regarding Coleman's abuse given its probative value in explaining

Baston's delayed reporting of Coleman. *See Jernigan*, 341 F.3d at 1284. Coleman is correct that testimony regarding alleged domestic violence could provoke antipathy from the jury. However, the government did not bring in evidence of domestic abuse simply to paint Coleman in an unfavorable light. Rather, the testimony was admitted due to its importance in establishing the credibility of an important witness. Testimony regarding domestic violence was critical to explaining why Baston had fears about reporting Coleman's confession sooner. This was not evidence "dragged in by the heels solely for prejudicial impact." *Wilson*, 788 F.3d at 1314.

For these reasons, the probative value of the domestic violence testimony was not substantially outweighed by it risk of unfair prejudice. The district court therefore did not abuse its discretion.

### D.    Refusal to Give Defense Theory Jury Instruction

Coleman next argues that the district court should have given his proposed defense theory jury instruction. A district court's refusal to give a proposed jury instruction is reviewed for abuse of discretion. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). The failure to give an instruction is reversible error only if the requested instruction: "(1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *Id.* at 947–48. Where the omission of the proposed instruction

did not prevent the defendant from raising the argument encompassed in the proposed instruction, the omission did not seriously impair the defendant's ability to present an effective defense. *United States v. Garcia*, 405 F.3d 1260, 1274 (11th Cir. 2005).

Coleman's proposed instructions stated that it was his "position" that "he did not commit the robbery," that "a government witness has falsely accused him of confessing to the robbery for motives of her own," and that "he was misidentified due to disregard of law enforcement policy." Coleman argues that he was "entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence," and that he was "clearly hampered" by the court's refusal to give his defense theory jury instruction. The government responds that Coleman's proposed instructions were merely restatements of his arguments rather than a theory of defense. The government also contends that the district court's jury instruction regarding identity adequately covered the requested instruction and Coleman was not impaired from raising an effective defense.

Regardless of whether Coleman's requested instruction was a correct statement of the law, or a statement of law at all, he has not shown that the court's failure to give the instruction seriously impaired his ability to present an effective defense. *See Eckhardt*, 466 F.3d at 947–48. Coleman still had the full ability to, and indeed did, argue during trial that he was not the man who robbed the bank. The

16

failure to give his proposed instruction also did not impair Coleman from raising arguments about the credibility of testifying witnesses or the reliability of the out-of-court identification.

Additionally, Coleman's proposed instructions were substantially covered by the actual charge. The court's charge instructed jurors on their discretion in determining the credibility of witnesses. The given instruction properly allowed the jury to determine if they had reasonable doubt after hearing testimony from Baston and Argeras. Finally, the court's instruction included explicit instruction to find Coleman not guilty if the jury had reasonable doubt as to the identity of the bank robber.

Accordingly, we affirm the court's refusal to give Coleman's proposed defense theory jury instruction.

### E.     Reasonableness of Coleman's Sentence

Finally, Coleman argues for the first time on appeal that his sentence was unreasonable. We typically review the reasonableness of a sentence for abuse of discretion. *United States v. Kirby*, 938 F.3d 1254, 1257 (11th Cir. 2019). But when the defendant does not object to the procedural reasonableness of his sentence before the district court, we review only for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). This Court may reverse a plain error that affects the defendant's substantial rights and seriously affects the fairness, integrity, or

public reputation of judicial proceedings. *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020).

Coleman raises no argument that his substantial rights were affected by the district court's sentencing. Instead, he argues only that his sentence was unreasonable because the court failed to consider his downward variance arguments, including a psychiatric evaluation that concluded he suffered from major depression, PTSD, alcohol abuse disorder, cannabis use disorder, cocaine use disorder, and stimulant use disorder. Coleman asserts that in doing so, the court failed to make individualized findings when assessing the 18 U.S.C. § 3353(a) factors. Those arguments are insufficient to show that the district court plainly erred. The district court correctly calculated the guidelines, and both parties were able to make arguments for what they considered to be an appropriate sentence. The district court did not discuss each Section 3353(a) factor independently, but it also was not required to do so. *See United States v. Sanchez*, 586 F.3d 918, 936 (11th Cir. 2009). And the 220-month sentence was within the guidelines range. Accordingly, the district court did not plainly err in imposing the sentence.

**III.**

For the above reasons, we **AFFIRM** the holdings of the district court.