**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10410
Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DEMETRIS KEWAN MACKIE,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20204-RAR-1

————————————

Before ABUDU, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

A jury found Demetris Mackie guilty of possessing a firearm as a convicted felon, and the district court sentenced him to 360 months of imprisonment. Mackie now appeals and challenges the

admission of certain trial evidence, the sufficiency of the evidence against him, and the reasonableness of his sentence. After careful review, we affirm.

## I. BACKGROUND

On April 12, 2023, a man was shot outside of a Miami, Florida, laundromat. Just three days later, two assailants attempted to rob another man outside of his Miami apartment and fired shots in the victim's direction when fleeing the scene. Mackie was named as a suspect, and during his arrest, police recovered a gun that was linked to both shootings. The next month, Mackie was charged with possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and he pleaded not guilty to the single-count indictment.

### A. *Pre-trial Matters*

Prior to trial, the government moved in limine to introduce evidence of the April 12 and 15 shootings. It argued that these shootings were: (1) direct evidence of Mackie's knowing possession of a firearm during the charged period of April 12–20, 2023; (2) inextricably intertwined with the charged offense; and (3) probative "other acts" evidence under Federal Rule of Evidence 404(b). Mackie opposed this request and sought to exclude evidence of the April 12 victim's injuries, arguing that it was irrelevant and unduly prejudicial.

At a motions hearing, the government withdrew its request to introduce evidence of the April 15 shooting because it could not locate the second victim. The district court allowed evidence of the

April 12 shooting to be admitted and declined to exclude evidence of the victim's injuries. It found that the April 12 shooting was "about as clear a definition of inextricably intertwined evidence as you can get." The court elaborated that even if this evidence was "somehow viewed as extrinsic," it was admissible under Rule 404(b) because it was probative of intent, knowledge, or absence of mistake as to the gun possession, and there was sufficient evidence connecting Mackie to the shooting. It further concluded that the probative nature outweighed any prejudice, as "the April 12[] possession [wa]s really the key for the continuing offense," and it did not "see any other way to describe it. It's, quite frankly, direct evidence of the charged offense. It's intrinsic."

The court further reasoned that the victim's injuries were "part and parcel of the narrative" but noted that a line could be crossed "if [the parties] start[ed] harping [on the subject]." It therefore ordered the government to limit any duplicative evidence, explaining that it did not "need 15 pictures of a blood trail, which then becomes . . . less probative and more prejudicial."

B. *Trial Evidence and Mackie's Motions for Judgment of Acquittal*

Mackie proceeded to trial in October 2023, and we will briefly summarize the trial evidence relevant to our analysis.

Detective Rashawnda Toombs testified that, on the evening of April 12, 2023, she was called to the scene of a shooting that had occurred in front of a coin laundromat. Once she arrived, she found two bullet casings and a blood trail leading through an adjacent breezeway. She followed the blood trail to a house, where she

recovered the victim's cell phone. The jury saw five photographs of the blood trail. Detective Toombs further explained that an eyewitness provided information leading to the shooter's social media account, which eventually led her to Mackie, whom she recognized from her previous employment as a corrections officer.

Detective Toombs elaborated that she interviewed the shooting victim at the hospital and reviewed surveillance footage of the scene, which showed Mackie and the victim arguing, Mackie hitting the victim with his gun, and Mackie firing two shots at the victim. She further explained that she obtained a warrant to track Mackie's cell phone and put out a notice that probable cause existed for his arrest. Detective Toombs also identified that Mackie had a teardrop or bullet-shaped tattoo near his right eye.

On cross-examination, Detective Toombs conceded that she was not aware of any DNA or fingerprint evidence recovered from the bullet casings found at the scene. She also conceded that she did not document her identification of Mackie, and that the telephone number connected to Mackie's social media account was registered to the name "Big Blocka" but she did not investigate the identity of this individual.

The April 12 shooting victim testified that he tried to interject in an argument between his friend and another man, but the man hit him with a gun, shot him in his upper right thigh, and ran away. The government presented eight seconds of a video showing the victim in his hospital bed, without audio. During his testimony, the victim described the shooter as wearing a gold grill and having

a bullet-shaped tattoo around his eye. Similarly, in his interview at the hospital, the victim stated that the shooter had "a fade with wicks," or "very mini" dreadlocks, in his hair, gold teeth, and a teardrop-shaped tattoo near his right eye, and he described the gun as having a silver slide and black bottom. However, the victim could not identify Mackie as the shooter in court.

Detective Daritza Machado testified to Mackie's arrest on April 20, 2023. She explained that cell site information placed Mackie's phone at a location on Miami Beach, and she saw Mackie, who was wearing a green satchel crossbody bag, enter a T.G.I. Friday's with two other men. When officers entered the restaurant, Mackie made eye contact with Detective Machado and "immediately took flight" towards the bathroom while still wearing the green bag. After the officers restrained Mackie, Detective Machado removed the bag from his person and saw a gun inside. However, she never saw Mackie reach into the bag and nothing in the bag indicated that it belonged to Mackie. Detective Javier Gomez, who assisted in Mackie's arrest, likewise testified that he saw Mackie with the bag and that he was still wearing it at the time of his arrest, but he never saw Mackie reach inside of it.

DNA analyst Victor Morillo testified that the gun recovered from the green bag contained at least two male DNA profiles, but the samples were too complex to separate individual DNA. Latent print examiner Julio Betancourt similarly testified that he did not find any complete fingerprints on the gun or magazine. However, firearm examiner Angela Garvin testified that, based on analysis of

bullet casings, the gun recovered from the green bag was the same one used in the April 12 shooting. On cross-examination, Garvin testified that this type of gun was manufactured with either a black or stainless-steel slide, and she confirmed that the gun recovered from the green bag had a black slide.

At the close of the government's case, Mackie moved for a judgment of acquittal, arguing that the evidence was insufficient to show his "knowing possession" of the firearm, which the district court denied. Mackie did not present any evidence, and the jury returned a guilty verdict as to the single-count indictment. The jury also returned a special verdict that found that Mackie had three previous felony convictions committed on different occasions. Following trial, Mackie renewed his request for a judgment of acquittal, which the district court again denied.

## C. *Sentencing*

Mackie's Presentence Investigation Report ("PSI") designated him as an armed career criminal and calculated a total offense level of 34. *See* United States Sentencing Guidelines Manual § 4B1.4(b)(3)(A) (Nov. 2023). The PSI further assessed a total of 24 criminal history points by assigning 3 points to each of the following Florida convictions: (1) 2012 convictions for grand theft auto, fleeing and eluding, and aggravated assault on a law enforcement officer; (2) 2013 convictions for grand theft auto, fleeing and eluding, and armed robbery; (3) a 2013 conviction for arson while incarcerated; (4) 2019 convictions for escape and criminal mischief; (5) a 2022 conviction for armed robbery; (6) a 2022 conviction for

lewd and lascivious exhibition at a correctional facility; (7) a 2022 conviction for obstruction while incarcerated; and (8) a separate 2022 conviction for obstruction while incarcerated.

With these criminal history points and armed career criminal designation, the PSI placed Mackie in criminal history category VI, the highest available. Based on a total offense level of 34 and criminal history category of VI, the PSI provided an advisory guideline range of 262 to 327 months of imprisonment.

The government moved for an upward variance and requested a sentence of 420 months of imprisonment. Mackie, in turn, asked the court to vary downward and impose the 15-year mandatory minimum sentence. He also filed several objections to the PSI, including challenges to (1) the inclusion of the April 15 shooting in the summary of the offense conduct, (2) the description of him as a "documented gang member," and (3) the representation of his criminal history.

At sentencing, Mackie reasserted these arguments and contended that he was being repeatedly punished for his "puffed up" criminal history that was already accounted for in his guideline range. He also highlighted his difficult childhood and his mental health conditions, noting that he grew up in a dangerous neighborhood, had not finished school, entered the prison system at a young age, and had exhibited psychological issues throughout his criminal history. While it was "sensitive" to Mackie's background, the district court found it "wholly inappropriate" to impose Mackie's

requested sentence given his "extensive criminal history and the seriousness of the allegations."

The government then presented testimony from Detective Alfredo Armenteros, who summarized the events of April 15, 2023. He explained that two armed men, one of whom was masked, approached the victim in front of his apartment and attempted to rob him. The men were scared away by the victim's neighbor, but the unmasked assailant, whom the victim later identified as Mackie, fired ten shots in the victim's direction as they drove away. Ballistics analysis later confirmed that the gun found in Mackie's green bag during his April 20 arrest was the same one used in the April 15 shooting. Detective Armenteros further testified that the Gang Information Clearinghouse identified Mackie as a gang member due to a previous admission made during a custodial police interview, and that Mackie had a tattoo consistent with Bloods membership.

The court found that Detective Armenteros's testimony showed by a preponderance of the evidence that Mackie was a documented gang member and that the gun recovered from Mackie's bag during his arrest was the one used in the April 15 shooting. It went on to explain that this was "certainly a serious case on its face" and opined that this was not an "ordinary felon-in-possession case," as it involved two shootings for which Mackie was facing state charges. The court elaborated that Mackie's "extensive" and "repetitive" criminal history demonstrated his inability to abide by the law, and this "escalating pattern of criminal conduct . . . necessitate[d] a longer and more serious period of incarceration." It

further found that there was a strong need to protect the community from Mackie's future crimes due to his gang affiliation and inability to "break[] any pattern of criminal behavior."

The district court also indicated that Mackie's upbringing and mental health, while "not mitigating enough to avoid an upward variance altogether," showed that the 420-month sentence requested by the government was not warranted. Accordingly, it sentenced Mackie to 360 months of imprisonment with 5 years of supervised release to follow. The court elaborated that a within-guidelines sentence would not adequately capture Mackie's criminal history, as his 24 criminal history points far exceeded the threshold necessary to place him in category VI. Mackie renewed his previous objections, and this appeal followed.

## II. STANDARD OF REVIEW

We review a district court's evidentiary rulings for an abuse of discretion and "must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018) (citation omitted).

We review a challenge to the sufficiency of the evidence and the denial of a motion for a judgment of acquittal de novo, "examining the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility issues in favor of the jury's guilty verdicts." *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015) (citation modified).

We review a court's factual findings made at sentencing for clear error. *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010). However, "if a defendant fails to clearly articulate a specific objection during sentencing," our review is confined to plain error. *United States v. Zinn*, 321 F.3d 1084, 1088 (11th Cir. 2003) (emphasis omitted). When reviewing the reasonableness of a sentence, we consider the totality of the circumstances under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III. DISCUSSION

### A. *Sufficient Evidence Supports Mackie's Conviction*

Mackie first asserts that the district court erred in denying his requests for a judgment of acquittal because insufficient evidence supports his conviction. We will uphold the district court's denial of these motions "if a reasonable trier of fact could conclude that the evidence established [Mackie's] guilt beyond a reasonable doubt." *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016) (citation omitted). Our "test for sufficiency of the evidence is identical regardless of whether the evidence is direct or circumstantial." *United States v. Beach*, 80 F.4th 1245, 1256 (11th Cir. 2023).

Mackie was charged under 18 U.S.C. § 922(g)(1), which makes it a crime for any person convicted of a felony to possess firearms or ammunition. To sustain a conviction on this count, the government had to show that: (1) Mackie knew that he was a convicted felon, (2) he knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce. *See* 18 U.S.C.

§ 922(g)(1); *United States v. Morales*, 987 F.3d 966, 977–78 (11th Cir. 2021). Mackie contends only that the government failed to satisfy the second element. We disagree.

The government may prove that a defendant knowingly possessed a firearm by showing that the defendant had either actual or constructive possession of a gun. *United States v. Pedro*, 999 F.2d 497, 500 (11th Cir. 1993). "To prove actual possession the evidence must show that the defendant either had physical possession of or personal dominion over the thing allegedly possessed." *United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998). "Constructive possession exists when a defendant has ownership, dominion, or control over an object itself," or dominion or control over the item in which it is concealed. *Id.*

The government presented evidence that Mackie was seen walking down the street on April 20 wearing a green crossbody bag, and he was still wearing the bag when he was arrested shortly thereafter. The jury also heard that once Mackie made eye contact with one of his arresting officers, he began walking to the bathroom and would not stop when directed to do so. Although the district court did not instruct the jury on "flight," the bag contained no identifying documents, and neither Mackie's DNA nor fingerprints were recovered from the gun, a reasonable juror could still infer that Mackie had dominion and control over the bag he was wearing across his body. Moreover, Mackie's behavior when he saw police enter the restaurant could allow a reasonable juror to conclude that he knew the gun was concealed inside the bag. *See*

*id.*; *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) ("Evidence of surrounding circumstances can prove knowledge."); *see also Beach*, 80 F.4th at 1256 (noting that a "jury is free to choose among alternative, reasonable interpretations of the evidence").

And, even if this evidence was insufficient to demonstrate Mackie's knowing possession of a firearm at the time of his arrest, a reasonable juror could still conclude from the trial evidence that Mackie knowingly possessed a gun on April 12, 2023. The jury heard that the gun recovered from Mackie's bag on April 20 was the same gun used in the April 12 shooting, and there was ample evidence pointing to Mackie as the perpetrator of that assault.

Detective Toombs testified that she recognized Mackie on the laundromat surveillance video, and the victim described the shooter as having a teardrop tattoo near his right eye and dreadlocks in his hair, which matched Mackie's description. Although the victim was unable to affirmatively identify Mackie as the shooter at trial, the jury heard that he told police the gun had a silver top and saw that the gun recovered from Mackie's bag had silver markings at the top, even though the slide was black.

The only question for our Court is "whether reasonable minds *could* have found guilt beyond a reasonable doubt, not whether reasonable minds *must* have found guilt beyond a reasonable doubt." *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008) (emphasis in original). And, based on the evidence in this case, we conclude that a reasonable jury could find—as this jury did—that Mackie knowingly possessed a gun between April 12 and

April 20, 2023. *See Beach*, 80 F.4th at 1255 ("We will not overturn a jury's verdict if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt." (citation modified)). As such, the district court did not err in denying Mackie's requests for a judgment of acquittal.

### B. *Mackie's Evidentiary Challenges Are Without Merit*

On appeal, Mackie challenges two aspects of the district court's evidentiary rulings. We address each argument separately.

### 1. Evidence of the April 12 Shooting

Mackie first contends that the district court erred in ruling that the evidence of the April 12 shooting was admissible under Rule 404(b). However, to warrant exclusion of this evidence, Mackie "ha[s] to convince us that [all] of the district court's findings were incorrect." *United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014).

In this case, the district court not only determined that the shooting evidence was admissible under Rule 404(b), but also concluded that it constituted intrinsic evidence of the charged offense and briefly noted that it was direct evidence of Mackie's alleged firearm possession. However, Mackie fails to challenge the district court's direct and intrinsic evidence findings on appeal. *United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc) ("[I]ssues not raised in the initial brief are deemed abandoned."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only

passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). As such, Mackie has forfeited any contention that these conclusions were erroneous and thus "abandoned . . . issue[s] on which he had to prevail in order to obtain reversal." *King*, 751 F.3d at 1277.

"When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.* (citation modified). Accordingly, we need not address Mackie's Rule 404(b) challenge and affirm the district court's decision to allow evidence related to the April 12 shooting to be introduced at trial.

2. Evidence of the April 12 Victim's Injuries

Mackie next challenges the introduction of evidence showing the April 12 shooting victim's injuries, as neither the hospital video nor blood trail photographs were necessary to prove any element of the charged offense. He contends that such evidence should have been excluded under Federal Rule of Evidence 403, which permits the "exclu[sion] [of] relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." We disagree.

Evidence of the victim's injuries was intertwined with discussion of the April 12 shooting, and the court limited the government's presentation of evidence on this point to five blood trail photographs and an eight-second hospital video. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007); *United States v. Foster*,

889 F.2d 1049, 1053 (11th Cir. 1989). Considering that "Rule 403 is an extraordinary remedy" that should be invoked sparingly, we cannot say that the probative value of admitting these select exhibits to provide the jury with a complete picture of the circumstances leading to Mackie's arrest was outweighed by undue prejudice. *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (citation modified); *see United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015).

In any event, "even an abuse of discretion will not warrant reversal where the resulting error was harmless," and Mackie cannot show that the admission of this evidence had "a substantial prejudicial effect" on the outcome of his case. *Barton*, 909 F.3d at 1330–31. As discussed above, even without proof of the victim's injuries, the government presented "overwhelming evidence" for a jury to find beyond a reasonable doubt that Mackie knowingly possessed a firearm as a convicted felon during the charged period, including forensic evidence linking the gun found during Mackie's arrest to the April 12 shooting and video evidence implicating Mackie as that shooter. *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999); *see Barton*, 909 F.3d at 1331 ("[W]here an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." (citation omitted)).

Given the substantial weight of the evidence against Mackie, we find no reversible error in the district court's decision to admit evidence of the April 12 victim's injuries.

C. *Mackie's Sentence Is Reasonable*

Finally, Mackie challenges the reasonableness of his 360-month sentence. In assessing the reasonableness of a sentence, we "must first ensure that the district court committed no significant procedural error," *Gall*, 552 U.S. at 51, including any reliance "on clearly erroneous facts," *United States v. Owens*, 96 F.4th 1316, 1320 (11th Cir. 2024). Once satisfied that a sentence is procedurally sound, our Court turns to the substantive reasonableness of a sentence and considers "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51.

Section 3553(a)'s "overarching" instruction to courts is that any sentence must be sufficient, but not greater than necessary, to comply with the purposes of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). These sentencing purposes include the need to reflect the seriousness of the offense, promote respect for the law, sufficiently punish the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). A court must also consider the offense's nature and circumstances, the defendant's history and characteristics, the types of sentences available, the applicable guideline range, any pertinent policy statements from the Sentencing Commission, the need to avoid unwarranted sentencing disparities between similarly situated defendants, and the need to provide restitution to any of the defendant's victims. *Id.* § 3553(a)(1), (3)–(7).

Mackie first asserts that the sentencing court erroneously considered his purported involvement in the April 15 shooting and his alleged gang membership, neither of which were proven at trial. However, the court was entitled to "take into account conduct for which [Mackie] was not charged or convicted, so long as" it was proven by a preponderance of the evidence. *United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir. 2015). We find no clear error in the court's determination that the government met this burden, as the evidence presented at sentencing demonstrated that it was more probable than not that Mackie was the unmasked perpetrator involved in the April 15 shooting and a documented member of the Bloods. *See United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (explaining that, under the preponderance of the evidence standard, the trier of fact need only "believe that the existence of a fact is more probable than its nonexistence." (citation modified)).

While Mackie takes issue on appeal with the district court's failure to make explicit findings as to the admissibility and reliability of much of this information, he did not raise these specific challenges below. He cannot now show plain error given the weight of this evidence and the fact that such information was clearly relevant to the court's crafting of an appropriate sentence. *See Zinn*, 32 F.3d at 1088; *Trainor*, 376 F.3d at 1331; *see also United States v. Belfast*, 611 F.3d 783, 827 (11th Cir. 2010) ("[N]o limitation shall be placed on the information concerning the background, character, and conduct of a person . . . which a court . . . may receive and consider for the purposes of imposing an appropriate sentence." (quoting 18 U.S.C. § 3661)). Indeed, evidence of Mackie's gang affiliation

and involvement in the April 15 shooting was "directly germane to several § 3553(a) factors," including the nature and circumstances of the charged offense, Mackie's history and characteristics, and the need to protect the public from future crimes. *Owens*, 96 F.4th at 1321 (citation omitted); *see United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).

Mackie further maintains that the district court incorrectly rejected his arguments in favor of a downward variance and erroneously imposed an upward variance. We are again unpersuaded by these arguments.

The weight given to each § 3553(a) factor is left to the sound discretion of the district judge, *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015), and the record demonstrates that the district court carefully considered the relevant factors and offered specific justification for its above-guideline sentence, *see United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013). Indeed, the court specifically considered Mackie's mitigating circumstances and chose not to vary upward to the degree requested by the government because of his childhood and mental health considerations.

And even though Mackie's calculated guideline range incorporated his criminal history, the district court was within its discretion to find that this range did not account for his pattern of escalating criminal behavior and to place greater weight on the need for deterrence and protection of the public over other factors discussed at sentencing. *See Butler*, 39 F.4th at 1355; *Rosales-Bruno*,

789 F.3d at 1263–64; *see also United States v. Osorio-Moreno*, 814 F.3d 1282, 1287–88 (11th Cir. 2016). While Mackie briefly suggests that the length of his sentence created unwarranted disparities, the district court specifically noted that this was not an average felon-in-possession case, and Mackie fails to point our Court to any similarly situated defendant who received a significantly lower sentence. *See United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015) ("When we consider a disparity in sentencing, we first ask whether the defendant is similarly situated to the defendants to whom he compares himself.").

Additionally, Mackie's 360-month sentence is below the applicable statutory maximum of life imprisonment, which is further indicative of reasonableness. *See* 18 U.S.C. § 924(e)(1); *United States v. Muho*, 978 F.3d 1212, 1227 (11th Cir. 2020); *see also Belfast*, 611 F.3d at 827 ("Under [the] advisory guidelines regime, judicial fact-finding about relevant conduct that supports a sentence within the statutory maximum . . . does not violate the Sixth Amendment.").

We will vacate a sentence only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation modified). We are not left with such a conviction here, and we find that the district court did not abuse its discretion in imposing Mackie's 360-month sentence.

## IV. CONCLUSION

We **AFFIRM** Mackie's conviction and sentence.